NATHAN F. MORGAN, appellant,

*v.*

CHARLES E. PRICE, respondent.

Two adjacent land-owners differed as to whether their verbal agreement included the extension and opening of two avenues across their premises, or only one. Meanwhile respondent, for appellant's benefit, consented to the alteration of another street, which also crossed the premises, and was likewise part of the original agreement, and it was in fact so altered.—*Held*, that this was such a recognition by appellant of respondent's version of the agreement as amounted to an abandonment of his own previous insistment and construction of the agreement, and estopped appellant from afterwards closing up one of the disputed avenues.

### STATEMENT OF FACTS.

Morgan owned a large tract of land situate in the village of Palmyra, Burlington county, adjoining land of William and Mary Wallace, and of complainant. Morgan had laid out his land, intersecting the same with certain streets and avenues, one of which was known as Garfield avenue, which is delineated on the map filed in the Burlington county clerk's office on December 3d, 1883.

Price afterwards (March 25th, 1885) bought a large tract of land adjoining the Morgan and Wallace land, and was about to lay the same out in building lots.

At this time (about May 1st, 1885) Morgan sought Price and urged him to join with him in a plan of mapping the land, so that the streets intersecting the same should be so laid out that they should be continuations of the streets already laid out by Morgan. This would cause the streets to cross the division line at very sharp angles, leaving on either side small triangular pieces of land.

Price and Morgan made a verbal agreement to unite in laying out their lands, and to exchange with each other parcel for parcel,

[789]

where the streets crossed the lines and formed such triangular pieces, so that each would own rectangular lots suitable for building purposes.

The Wallaces, though not actual parties to the agreement, joined in the movement to the extent of conveying so much of their own land as was necessary to the main object. Wallace conveyed the property marked "B B" on the map to Price, with the reservation of Garfield avenue as a public highway forever. Price, in consideration thereof, laid out Charles street as a fifty-foot street entirely on his own land. Wallace conveyed to Morgan the triangular piece marked "C," and Morgan conveyed to Wallace the triangular piece marked "A." These pieces of land called for a plotted public street (to wit, Garfield avenue), as a front or boundary.

It is submitted that Morgan, having made the conveyance aforesaid, thereby dedicated such street to public use, and is estopped from reclaiming the same.

Pursuant to said agreement, Price proceeded and laid out his tract of land, as he had agreed to do. Price conveyed to Morgan the premises marked "D" and "D." Morgan conveyed to Price premises marked "E" and "E."

Attention is called to the following further conveyance:

"Mary Wallace to Morgan, of the triangular piece of land marked 'F,' thereby completing his recognition of Garfield avenue, as grantor and grantee, located as agreed upon—from Wallace street to Charles street."

Morgan not only agreed to open up Garfield avenue, but he actually opened it, grading the same, plowing out the gutters, and surveyed and staked off the lots. The public used it as a public highway by driving and walking over it.

When the parties came to exchange lands along the division line between their respective tracts, a controversy arose between them. They could not agree. Price would not agree to open Morgan avenue on his land.

Afterwards, Price handed Morgan a printed copy of a map that he had made of his land, with Morgan avenue cut off south of Cleveland street, and a new street delineated thereon called

Hill street.   Hearing that Price was selling lots according to this new plan, Morgan went to the clerk's office and found that it was true.

Thereupon Morgan placed obstructions across Garfield avenue, north of the division or diagonal line, to keep Price from using that avenue.   At the same time he had a new map of his tract made, cutting off Garfield avenue, at the place of the obstructions, and putting in a new avenue, called Columbia avenue, running from Wallace street to Charles street.   The new map was out on September 11th, 1885.

On October 6th, 1885, Price filed his bill of complaint, asking:

1. That Morgan be required to execute a deed of dedication of Garfield avenue, from Wallace street to Charles street, as he originally laid it out.

2. That he be restrained from obstructing said Price, his servants &c., from the use of said Garfield avenue as a public highway, forever, and from selling any land covered by said avenue for any purpose inconsistent with his agreement.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

The defendant, Morgan, owned land extending from the southeast to the northwest to a public road, by the side of which was a railroad.   On the line of this railroad, and near by Morgan's northwest line, is a station.   To the west or southwest of Morgan's tract and next to the said roads the lands were owned by other persons than the parties to this suit.   These last-named lands were located between said roads and the lands of the complainant, Price.   One William R. Wallace and one Mary Wallace each owned different parcels of these lands southwest of Morgan's land and also adjoining lands of Price.   The land of Price is also contiguous to Morgan on the southwest.   Their lands adjoin for some distance.   So far as I can discover, the line which separates these lands, Morgan's on the one side and all the others named on the other, is very nearly straight.   Such line is not at right angles with the line of said roads by several degrees.

Morgan had been the owner of his land for some time before Price purchased, and had mapped and laid out a portion of it, about two blocks in width, next to said roads, in avenues, streets and lots, and had offered the lots for sale. One of these avenues he called Garfield avenue and one Morgan. As projected they were at right angles with the lines of said roads, and, if extended over the lands of said William R. Wallace and of said Price, would cross the division line at very sharp angles, leaving, of course, on either side small triangular parcels of land, almost worthless for building purposes.

Immediately after Price purchased, Morgan called upon him and urged him to join with him in a plan of mapping all of their lands in streets, avenues and lots for the public and for sale. At length they agreed so to do, but without writing. Though there was no writing, I think so much has been done as to take the case out of the statute of frauds. To succeed in the plan proposed, it was necessary to have the consent of the Wallaces, and it appears, from what the Wallaces afterwards did, that the reliance on them to join in the movement was not in vain, although there is nothing to show that either of the Wallaces took any part in the agreement.

The parties, Price and Morgan, made a verbal agreement to unite in laying out their lands, and to exchange with each other parcel for parcel, wherever the streets crossed the land line and formed such triangular pieces as aforesaid, so that each could be accommodated at that point, with a rectangular lot of the same dimensions as the adjoining lots. The Wallaces have conveyed so much of their lands as are necessary for the main design, and, as will be seen, Price and Morgan have also made conveyances. Morgan opened Garfield avenue over the lands of William R. Wallace, and allowed the public to use it.

Morgan now threatens to close Garfield avenue. Hence this bill by Price asking for a specific performance. Morgan says that he is willing to perform but that Price is not.

There is no doubt but that the agreement included Garfield avenue in all its length. But the parties dispute as to its application to Morgan avenue. Morgan insists that it was to be

extended also, and that the triangular parcels made on either side of the land line were to be exchanged parcel for parcel, as in other cases, and that Price refuses to carry out the agreement in this particular. Morgan avenue, being further to the northeast, strikes the land line very much further away from the said roads and depot. Of course, if I should find that Morgan avenue was included in the agreement in all its length, and that Price refused to carry out the agreement in that respect, every principle on which this court acts would require me to dismiss, and would justify me in dismissing, this bill; and this, too, notwithstanding the fact that the complainant's counsel, while protesting that the defendant is in error, consents that even now the court may decree that the agreement includes the right to extend Morgan avenue, and the right to compel conveyances of parcel for parcel, as in the former case. This consent, after the filing of the bill, cannot aid whatever want of equity existed when the complainant took the initiative by filing his bill. Nor could I make such decree now, for there is nothing, no proper prayer in the pleadings, on which it can be based. I ought to say that there is some testimony in the case quite strongly leading to the conclusion that Morgan did not regard the extension of Morgan avenue of any consequence, and that he was entirely satisfied to secure an agreement as to the rest of the land. However, while this may be so, as it is not insisted on, I do not express any conclusion concerning it.

But there is another fact in the case of great importance. After the parties had differed on this point, and had well understood each other as to the extent of their disagreements, Morgan was willing to act upon the agreement as Price understood it, and did act upon it, by having Price consent to the alteration of another street, called Henry street, over Price's lands, for the benefit of Morgan. This was done in the midst of the dispute concerning Morgan avenue, and while Price was desirous of making arrangements on some equitable basis, as he thought, of the difficulty. But, although Price wanted the question adjusted (whether fairly or not, I do not pretend to say), Morgan refused to carry on negotiations any further to that end, and insisted on proceeding

Morgan *v.* Price.

with said Henry street alteration so as to suit his own conveni-
ence, to which both finally assented. And this arrangement was
then and there carried out under the agreement, by altering the
line of Henry street, and by extending it, and by each one
making a deed to the other for such parcels of land as were
necessary to make rectangular lots thereon. This much of the
transaction is unimpeached and unquestioned. Both parties
stand by it and claim under it. I think that the defendant,
Morgan, having accepted this benefit under the agreement with
so much knowledge, is precluded from making the defence he
now presents. It does not seem at all reasonable that he would
have taken so important a step under an agreement which he at
the time knew the other party ignored in an essential particular.
Hence, it is quite reasonable to conclude that he was willing to
abandon any further claim as to Morgan avenue, or was con-
vinced that it had not really been made a part of the agree-
ment. Several weeks after this, Morgan closed up Garfield ave-
nue, and sought to abandon the plan which he had proposed, and
thereby to deprive Price of the value to his lands of direct com-
munication to the said depot, by Garfield avenue.

I think the complainant is entitled to a decree for a perpetual
injunction according to the prayer of the bill, and for specific
performance of his contract, and that the defendant must open
Garfield avenue. The complainant is entitled to costs.

*Mr. M. R. Sooy,* for the appellant.

*Mr. T. B. Harned,* for the respondent.

Per Curiam.

This decree affirmed, for the reasons given by the vice-chan-
cellor.

Magie, J. (dissenting).

After a careful examination of the evidence, I am convinced
that Price ought not to be aided by a court of equity in enforcing
Morgan's parol agreement to open the street in question, because

Price, by the same agreement, bound himself to open other streets across his property, and has disabled himself from the performance of his part of the agreement by laying out his property in a different mode.

I shall vote to reverse.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, SMITH, WHITAKER—13.

*For reversal*—MAGIE—1.